**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PIC Corporation, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:24-cv-1438 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| The Entities and Individuals Identified in ) | |
| Annex A, ) | Magistrate Judge Jeannice W. Appenteng |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL
MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

**I. INTRODUCTION AND SUMMARY OF ARGUMENT**

PIC Corporation ("PIC" or "Plaintiff") brings this action for federal trademark infringement and counterfeiting and federal false designation of origin and unfair competition. As alleged in the Complaint, Defendants have engaged in the widespread marketing, advertising, offering for sale, and sale of counterfeit products sold under Plaintiff's intellectual property on the internet. These sales are solicited and made on online marketplaces and on internet websites that portray Defendants' products as genuine Plaintiff products in order to cause confusion among the public and to illicitly profit from that confusion. In short, Defendants have run sophisticated infringement operations seeking to exploit Plaintiff and its intellectual property, with disregard for anything except generating profits. Plaintiff has brought this action to protect the goodwill represented by its valuable trademark and to protect its customers and potential customers from unwittingly purchasing inferior, counterfeit products sold by Defendants under or in connection with Plaintiff's intellectual property.

Plaintiff is deeply concerned that absent a preliminary injunction Defendants are likely to take actions which will make it extraordinarily difficult, if not impossible, for Plaintiff to obtain

the remedies it seeks in its suit. For example, Defendants are likely to shut down or delete their existing, operative websites, usernames, and accounts. They are also likely to immediately transfer the money currently residing in accounts within this Court's jurisdiction to foreign accounts located abroad that are not within this Court's jurisdiction. Further, the existing infringing merchandise will remain intact and within Defendants' possession, meaning that Defendants will likely open new websites and new accounts under different names or accounts to simply continue their counterfeit enterprises selling the same goods. Based on conduct typically undertaken by online counterfeiters such as Defendants, there is an overwhelming risk that Defendants will take quick, unilateral action upon learning of Plaintiff's lawsuit that will deprive Plaintiff of the remedies it seeks.

Plaintiff's well-pleaded factual allegations and evidence establish that issuing a preliminary injunction against Defendants is necessary and proper. There is no dispute that Plaintiff is the owner of the registered Plaintiff trademark identified in the Complaint. Nor is there any doubt that Defendants' operations cause a likelihood of confusion with Plaintiff's registered mark. Defendants' illicit counterfeit activities should be restrained, and Plaintiff respectfully requests that this Court issue a preliminary injunction order against the AliExpress Defendants listed in **Exhibit 1** hereto.

## II. STATEMENT OF FACTS

On March 25, 2024 the Court granted Plaintiff's motion for *ex parte* temporary restraining order, including a temporary injunction, a temporary asset restraint, and expedited discovery. On April 5, 2024, the Court granted an extension of the temporary restraining order through April 22, 2024. On April 19, 2024 Plaintiff filed a Motion for Entry of Preliminary Injunction and accompanying Memorandum in Support of Motion for Entry of Preliminary Injunction and

Declaration of Valérie R. Cambronne in Support of Plaintiff's Motion for Entry of a Preliminary Injunction. (Dkts. 36, 37, 37-002). On April 19, 2024, Plaintiff filed a Motion to Compel AliExpress to produce the relevant information required by the granted temporary restraining order. (Dkt. 38). On April 22, 2024, AliExpress produced the required information rendering Plaintiff's Motion to Compel moot. On April 22, 2024, the Court extended the temporary restraining order until April 29, 2024 as to all Defendants and entered and continued Plaintiff's Motion for Preliminary Injunction to April 29, 2024 to permit the time to file the instant Supplemental Motion for Entry of a Preliminary Injunction to address the AliExpress Defendants. (Dkt. 39). Plaintiff now brings this Supplemental Motion for Preliminary Injunction as it relates to the AliExpress Defendants identified in **Exhibit 1** attached hereto.

Since entry of the TRO, Plaintiff provided Aliexpress with a copy of the TRO, resulting in the freeze of marketplace accounts at AliExpress associated with each respective Defendant such that Defendants have been restrained from removing or transferring money in those accounts.

Plaintiff requests the preliminary injunction be entered to ensure that the Defendants' respective accounts and all funds therein remain frozen throughout the duration of this litigation so that Defendants do not remove or transfer their assets in those accounts.

### III.     JURISDICTION

This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred. Each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, by offering online sales via one or more interactive, commercial websites, identified in Annex A to the Complaint. Each of the

Defendants is committing tortious acts in Illinois by targeting Illinois residents for its sales as evidenced by Defendants offering to ship to Illinois, accepting payment in U.S. dollars, and, on information and belief, selling counterfeit products using Plaintiff's federally registered intellectual property to Illinois residents. *See* Complaint at ¶ 5. Without the benefit of an evidentiary hearing, a plaintiff bears only the burden of alleging a *prima facie* case for personal jurisdiction; all of a Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010).

IV.     ARGUMENT

The entry of a preliminary injunction is appropriate because it would stop Defendants from benefiting from their wrongful use of Plaintiff's intellectual property, prevent Defendants from thwarting the ability of Plaintiff to obtain the equitable relief it seeks, and preserve the status quo until such time as the Court renders a judgment on the merits.

In the absence of a preliminary injunction, Defendants can and likely will delete their current websites and online marketplace accounts in order to circumvent Plaintiff's ability to gain meaningful relief. *See* Declaration of Valérie R. Cambronne at ¶ 12. For example, sellers of counterfeit merchandise monitor websites such as *sellerdefense.cn* which warns sellers that an anti-counterfeiting complaint has been filed in connection with the product that they are selling. The warnings are usually posted on *sellerdefense.cn* within days of the Complaint being filed. *Id.* at ¶ 11. As a result, Defendants transfer any money in U.S. accounts to foreign accounts outside of the jurisdiction of this Court, and simply start their counterfeiting activities anew with new fictitious identities selling the same counterfeit merchandise. *Id.* at ¶ 10-12. Moreover, Courts have recognized that civil actions against counterfeiters present special challenges that justify

4

proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ("proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers before temporary injunctive and impoundment relief can be granted").

### A. Standard for Preliminary Injunction

District courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). Here, the Court has already considered the necessary factors and granted Plaintiff's Motion for an *ex parte* temporary restraining order which provided for a freeze of Defendants' assets and expedited discovery. A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If the Court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach." The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and

5

intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 896. The greater the movant's likelihood of succeeding on the merits, the less the balance of harms need be in its favor. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

### B. Plaintiff Will Likely Succeed on the Merits of Its Claims

Plaintiff need only demonstrate a "better than negligible" chance of success on the merits of at least one of its claims, a standard the court has characterized as a "low requirement." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA*, 549 F.3d 1079, 1096 (7th Cir. 2008). Plaintiff will likely succeed on its trademark infringement claims.[1]

To prevail on a trademark infringement claim, a plaintiff must show that (1) its mark is protectable and (2) the defendants' use of the mark is likely to cause confusion among consumers. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). In the Seventh Circuit, the factors that a court must consider in assessing whether a likelihood of confusion exists include: (1) similarity of the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be used by consumers; (5) strength of the Plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its product as that of the plaintiff. *Ty, Inc. v. The Jones Group*, 237 F.3d 891, 897-98 (7th Cir. 2001).

Neither trademark ownership nor likelihood of confusion is likely to be disputed in this case. The Insect Trap Trade Dress asserted by Plaintiff in the Complaint is federally registered (U.S. Reg. No. 4387612). The Insect Trap Trade Dress has been used by Plaintiff since at least

---

[1]Plaintiff's other claims arising under Section 43(a) of the Lanham Act are assessed under highly similar, if not identical, standards.

1995. Moreover, the corresponding registration is prima facie evidence of the mark's distinctiveness and Plaintiff's ownership. 14 U.S.C. § 1115(a).

Here, likelihood of confusion cannot be disputed (at least not in good faith). First, the products the Defendants advertise, offer to sell, and sell embody the Insect Trap Trade Dress. Further, the product that Defendants advertise, offer to sell, and sell is the same exact type of product sold by Plaintiff under or in connection with its Insect Trap Trade Dress and identified in Plaintiff's federal trademark registration. Defendants' use of the Insect Trap Trade Dress is concurrent and in the same geographic area, namely in the United States, as that of Plaintiff. The channels of trade are also identical to one another in that both Plaintiff and Defendants sell their products over the internet to consumers. The degree of care used in purchasing this type of accessory is not particularly high, as it is generally an everyday purchase that is not a high dollar item. As to the strength of the mark, both the acquired distinctiveness of the Insect Trap Trademark and the evidence concerning Plaintiff's millions of dollars in sales establish that the Insect Trap Trademark is distinctive and has acquired significant distinctiveness to consumers. The intent prong also weighs in favor of a likelihood of confusion as the Defendants' sites and online marketplaces intentionally offer identical products embodying the Insect Trap Trade Dress in order to misdirect consumers to Defendants for the purpose of selling them unauthorized, counterfeit products. None of Defendants' infringing conduct was undertaken with Plaintiff's permission or authorization. Finally, where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Since Defendants are counterfeiters and not mere infringers, they are presumed

to be causing a likelihood of confusion as a consequence of their illicit conduct. Plaintiff has established a substantial likelihood of success on the merits of its trademark infringement claim.

### C. There Is No Adequate Remedy at Law and Plaintiff Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

Given Plaintiff has proven a likelihood of success on the merits, Plaintiff is entitled to a rebuttable presumption of irreparable harm under the new law established by the Trademark Modernization Act. Nonetheless, it is worth noting that irreparable injury is often found in trademark infringement cases because "confused persons will mistakenly attribute to plaintiff defects or negative impressions they have of defendant's goods or services, and then the Plaintiff's reputation is at risk." *Venus Laboratories, Inc. v. Vlahakis*, Civ. No. 15 C 1617, 2015 WL 1058264 at *3 (N.D. Ill. March 5, 2015), citing 5 McCarthy on Trademarks and Unfair Competition, § 30:47.30 (4th ed.). "This threatened and actual loss of reputation and good will cannot adequately be compensated for in dollars and cents after the fact." *Id*. The risk of irreparable harm is particularly relevant here because the Defendants products made and sold under the Insect Trap Trade Dress come from a different manufacturer and are almost certainly of inferior quality. This increases the risk that the products sold by Defendants are manufactured defectively and are inferior to Plaintiff's Insect Trap product.

Finally, upon information and belief, Defendants reside in foreign jurisdictions and have no presence in the United States, and thus a monetary judgement is likely uncollectable. District courts have held that money damages were insufficient in similar cases involving foreign infringers. *See e.g., Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient.");

*Nike, Inc. v. Fujian Bestwinn China Indus. Co.*, 166 F.Supp.3d 1177, 1179 (D. Nev. 2016) ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn"). Plaintiff will therefore suffer immediate and irreparable injury, loss, or damage if a preliminary injunction order is not issued.

### D. The Balancing of Harms Tips in Plaintiff's Favor

The balancing of harms tips decidedly in Plaintiff's favor. In assessing the potential harm to Defendants, courts apply a "sliding scale: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *See Gallery House, Inc. v. Yi*, 582 F. Supp.1294, 1298 (N.D. Ill. 1984) (the possibility that a defendant will lose profits "merits little equitable consideration"; and, an infringer has no "standing to complain that his vested interest will be disturbed").

In the absence of a preliminary injunction, Plaintiff would be harmed by having competing persons and entities offering products that embody the Insect Trap Trade Dress, what appear to be identical, but undoubtedly inferior products. This would harm Plaintiff's business prospects, goodwill, and reputation. Defendants have no legitimate interest in selling products embodying Plaintiff's Insect Trap Trade Dress. Unlike Plaintiff, Defendants are not at risk of damaging their reputation or goodwill because they trade under fictitious or ephemeral identities. To the extent Defendants would be harmed at all by an injunction (which is difficult to conceive insofar as the Defendants are engaged in unlawful counterfeiting enterprises), that harm is far outweighed by the immeasurable damage to Plaintiff if Defendants were able to simply close their existing accounts and reopen new accounts, continuing to advance their counterfeit

9

enterprises under new identities and websites, rendering Plaintiff's most significant remedies futile.

### E. Issuance of the Injunction Is in the Public Interest

Courts within this Circuit have upheld the importance of protecting intellectual property. For example, the Seventh Circuit has recognized that the public interest is served by protecting trademarks and avoiding consumer confusion. *See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 n. 8 (7th Cir. 1988). In trademark actions, the public interest favors the issuance of a temporary restraining order where it will prevent consumer confusion. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) ("the public interest is served by the injunction because enforcement of the trademark laws prevents consumer confusion").

Here, the public's interest is best served by preventing a likelihood of confusion which would result in the absence of a preliminary injunction. If Defendants are not enjoined, consumers interested in buying bona fide Plaintiff products will be inevitably deceived into purchasing counterfeit and inferior product instead. As such, the issuance of such an order is in the public interest.

### F. Plaintiff Is Entitled to a Preliminary Injunction Preventing the Creation, Advertising, Marketing, Offering for Sale, and Sale of Counterfeit Goods

#### 1. Issuance of Preliminary Injunction

Plaintiff has demonstrated all elements required to establish the necessity of a preliminary injunction. An order converting the existing temporary restraining order to a preliminary injunction is necessary to restrain Defendants from re-starting their infringing activities and causing irreparable harm to Plaintiff and its intellectual property, as well as to the consumers who rely on the Insect Trap Trade Dress to find bona fide Plaintiff products.

As described above, Defendants are the sorts of persons and entities who would likely hide, move, or destroy evidence absent a preliminary injunction. Declaration of Valérie R. Cambronne at ¶¶ 10-12. *Century Home Entmt. Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636, 638–639 (E.D.N.Y. 1994) ("it is the norm in this district that where a danger of destruction or hiding of the evidence exists to grant seizures . . . Plaintiff need not show that a particular defendant would not adhere to a TRO but rather only that someone like the defendant would be likely to hide or destroy the evidence of his infringing activity").

### 2. An Order Preventing the Fraudulent Transfer of Assets

Plaintiff requests an order restraining Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of counterfeit Plaintiff product is not impaired. If such an order is not issued in this case, Defendants may disregard their obligations and fraudulently transfer financial assets to overseas accounts. *Id.* at ¶¶ 10-12. Counterfeiters frequently use false identities and transfer assets from U.S. accounts to foreign accounts in order to impede the efforts of brand owners to enforce their trademark rights, making it extremely difficult, if not impossible, for a brand owner to prevent or seek a remedy for such wrongdoing. If Defendants were to hide or dispose of their assets upon learning of the litigation, an accounting by Plaintiff would be rendered meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a Plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892 at *13 (N.D. Ill. Nov. 8, 2005). In addition, Plaintiff has shown a strong likelihood of success on the merits. Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff

11

all profits realized by Defendants as a consequence of Defendants' infringing acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff and such an order is warranted in this case.

## V.     CONCLUSION

Until restrained by this Court, Defendants' ongoing infringement operations caused irreparable injury to Plaintiff's business and brand and confusion among consumers, who erroneously were led to purchase counterfeit merchandise sold by Defendants. Plaintiff respectfully requests a preliminary injunction preventing Defendants from infringing Plaintiff's intellectual property. Absent such relief, Defendants' infringement will harm Plaintiff's reputation and goodwill.

Dated: April 23, 2024

Respectfully submitted,

/s/ *Valérie R. Cambronne*
Marshall, Gerstein & Borun LLP
Benjamin T. Horton
Gregory J. Chinlund
Kelley S. Gordon
Michelle Bolos
John J. Lucas
Valérie R. Cambronne
Krista M. Solano
233 South Wacker Drive
6300 Willis Tower
Chicago, Illinois 60606-6357
Telephone: (312) 474-6300
Fax: (312) 474-7044
bhorton@marshallip.com
gchinlund@marshallip.com
kgordon@marshallip.com
mbolos@marshallip.com
jlucas@marshallip.com
vcambronne@marshallip.com
ksolano@marshallip.com

Attorneys for Plaintiff